CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant, vs. BYSTROM, imp., Respondent.
SAME, Respondent, vs. WASHBURN LAND COMPANY, imp., Appellant.

*January 16—February 13, 1917.*

*Deeds: Quitclaim: Cancellation: Rescission: Mistake of grantor as to title: Negligence: Tax titles: When tax deed void: Possession by original owner: Equity: Costs: Discretion: Innocent purchaser of land: Railroads: Right of way, when does not pass by deed.*

1. In an action against a railway company to quiet title based upon a tax sale and deed of certain lands over which the defendant's railroad ran and which was otherwise occupied for railroad purposes outside of the right of way, the complaint alleged that the land was vacant and unoccupied and made no reference to the railroad. The defendant railway company owned a very large amount of land in the state, in general charge of its land commissioner, and the matter was referred to him by the legal department of the company. He reported that the company had

no interest in the lands, and relying upon such report, and not knowing that the railroad ran over the lands and that they were in the charge of its right-of-way commissioner, the company, through its legal department, disclaimed any interest in the lands and gave a quitclaim deed to the tax-title claimant. The lands remained in the possession of the railway company and it paid the taxes thereon for more than three years after the recording of the tax deed. In a subsequent action by the railway company to set aside on the ground of mistake said quitclaim deed and a subsequent deed given by the grantee therein, upon evidence of the above and other facts it is *held* that the officers of the company were not inexcusably negligent in giving the quitclaim deed, and that because of their mistake such deed is void as against the grantee therein.

2. Equity will grant relief by way of rescission in a proper case for the mistake of one party as readily as for a mutual mistake, where it would be contrary to equity and against conscience to allow the enforcement of the contract.

3. Under secs. 1187, 1188, Stats., where the original owner of land sold for taxes continues in the occupancy and possession thereof for three years after the recording of the tax deed, such deed is void; and the possession of a part of the premises is possession of the whole.

4. In an equitable action where important issues are contested by the defendant the costs are in the discretion of the court; and in this case a judgment for costs against the defendant is *held* not an abuse of discretion.

5. One who purchased a part of the lands in suit from the grantee in the quitclaim deed above mentioned while the record title was in such grantee, and who, before purchasing, had examined such title and had also made inquiry of the railway company's land commissioner as to what that company's rights were and had been informed that it did not own the land, was properly held an innocent purchaser and his title confirmed.

6. Upon the facts above stated the railroad right of way over the lands in suit did not pass to the grantee in the quitclaim deed or to the purchaser from such grantee.

APPEALS from a judgment of the circuit court for Bayfield county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This action was brought to cancel and set aside a quitclaim deed of the northeast quarter of the southwest quarter and the south half of the northwest quarter of the southwest quarter of section 9, town 47 north, of range 5 west, in Bayfield

county, Wisconsin, executed by the plaintiff to the defendant *Washburn Land Company,* and the record thereof, and also to cancel a warranty deed of the northeast quarter of the southwest quarter to the defendant *Jonas Bystrom* and the record thereof, on the ground that the quitclaim deed from plaintiff to the *Washburn Land Company* was made by mistake, and that the conveyance by the *Washburn Land Company* to *Bystrom* was made under such circumstances that *Bystrom* was chargeable with notice of plaintiff's claim to the land and was not an innocent purchaser for value.

The answer of defendant *Washburn Land Company* put in issue the allegations as to the mistake in the execution of the deed to it, and also set forth the conveyance to defendant *Bystrom,* but set up no counterclaim for the purpose of quieting its title to the land.   The defendant *Bystrom* set up a tax title in one D. M. Maxcy, conveyance of the land by him to the defendant *Washburn Land Company,* and purchase by defendant *Bystrom* and conveyance to him by the *Washburn Land Company* of the forty acres claimed to be owned by defendant *Bystrom.*

The plaintiff replied alleging that the tax deed was void for several reasons.   It was stipulated at the close of the trial that the court should determine, subject to the right of appeal, the title to the twenty acres held by the *Washburn Land Company* as well as the forty-acre tract held by defendant *Bystrom.*

The court below made findings of fact and conclusions of law and ordered judgment thereon that the defendant *Bystrom* was an innocent purchaser of the forty acres and quieted title to the same in him, but set aside the title to the south half of the northwest quarter of the southwest quarter of section 9, claimed by the defendant *Washburn Land Company.*   Judgment was entered accordingly, from which both parties appealed.

For the plaintiff there was a brief by *Luse, Powell & Luse*

of Superior, attorneys, and *J. B. Sheean* of St. Paul, Minnesota, of counsel, and oral argument by *L. K. Luse.*

*A. W. MacLeod* of Washburn, for the defendant *Washburn Land Company.*

For the defendant *Bystrom* there was a brief by *Sanborn, Lamoreux & Pray* of Ashland, attorneys, and *Horace B. Walmsley* of Milwaukee, of counsel, and oral argument by *F. B. Lamoreux.*

KERWIN, J.     It is established by the findings that D. M. Maxcy obtained a tax deed of the land in question on May 18, 1903, on sale of 1900 for the taxes of 1899, which deed was recorded June 26, 1905; that on or about June 17, 1905, Maxcy conveyed the land to defendant *Washburn Land Company;* that in December, 1907, the *Land Company* commenced an action against the plaintiff to quiet title to the northeast quarter of the southwest quarter and the undivided half of the northwest quarter of the southwest quarter of section 9, town 47 north, of range 5 west, under the tax deed and title above mentioned, the complaint being in the usual form, alleging that the land was vacant and unoccupied and no reference being made therein to the plaintiff's railroad being upon the tracts; that the summons and complaint were transmitted to the legal department of the plaintiff and by it referred to Mr. Bell, the land commissioner of plaintiff, with the inquiry as to whether the company had any interest in the land or defense to the action; that said land commissioner returned the summons and complaint and stated that the company had no interest in said land; that, relying upon and believing such information and not knowing that plaintiff's railroad ran over said land, the plaintiff executed the quitclaim deed and release of any interest it had in said land to the *Washburn Land Company,* the release and disclaimer being signed by the attorney for the company; that at the time of making said deed and for many years prior thereto and

up to the time of the trial of the action said Bell was land commissioner of plaintiff and in charge of its land-grant lands received from the state and the United States, but had not charge of lands owned by the company and used in the operation of its railroad and used for railroad purposes; that the company had a right-of-way commissioner who had charge of such lands; that the legal department did not refer the matter to the right-of-way commissioner, assuming that the land in question would have been in charge of the land commissioner if the company had any interest in it; that said deed and disclaimer were made by plaintiff under a mistake of the facts as to its interest in said land; that such mistake was not shared in, however, by the defendants, but the defendant *Land Company* was mistaken as to occupancy; that the plaintiff did not become informed of the fact that it owned the land at the time the quitclaim deed was given and that its railroad ran across it, and of the use it had made of it and was making of it, until about December, 1914; that the lands in question have been ever since 1899 assessed to the plaintiff and the tax paid by it, the assessment, however, excepting the right of way, usually three or four acres; that the defendant *Bystrom* in the fall of 1914 went upon the land and examined it with a view of purchasing for gravel purposes, and, supposing that the railroad company owned it, wrote to the land commissioner offering to purchase the northeast quarter of the southwest quarter, and received reply from the land commissioner, dated November 23, 1914, that the plaintiff did not own the land and had no interest in it; that defendant *Bystrom* thereupon, relying upon said information, after examining the records of ownership in the register of deeds' office, purchased the forty by warranty deed from the defendant *Land Company,* not knowing the circumstances under which the quitclaim deed was executed by the plaintiff to said *Land Company,* and paid therefor $400; that the said deed to *Bystrom* was executed

December 21, 1914, and recorded in March, 1915; that this deed made no exception of the railroad right of way and no reference thereto; that a mutual mistake was made in the deed from the *Land Company* to defendant *Bystrom* in not excepting plaintiff's right of way in said conveyance, and it was not intended by either of defendants that the main track, sidetrack, or switches located upon the premises at the date of said deed were to be conveyed thereby; and that so far as said deed covers said railway tracks, right of way, sidetracks, or switches of the plaintiff the same was a mutual mistake between the parties defendant.

The court further found that February 14, 1884, the plaintiff became the owner of all of section 9, township 47 north, range 5 west, and sold the same, except a strip 100 feet wide across said section upon which its railroad had been built; that in 1899 plaintiff dug test pits and found that the land in question contained sand and gravel suitable for repairs of its railroad, and in 1899 plaintiff bought the land in question; that the railroad track of the plaintiff ran easterly and westerly across said land; that for the purpose of taking out sand and gravel from the land in question adjacent to the track from time to time as needed for repairs of its track, plaintiff in the year 1899 laid a track extending southeasterly from the main track in a semicircular form for a distance of about 500 feet on the east forty, taking up some material that fall, and in the spring of 1900 took about 1,500 carloads of sand and gravel for the repair of its railroad; that in 1907 plaintiff constructed a "loading track," connected with its main track at the easterly side of the east forty and extending westerly on the southerly side of the main track a little less than fifty feet south of the center of the main track, 1,600 feet long, and took out with a steam shovel a strip of sand and gravel on the south side of said loading track about thirty feet in width extending the length of said loading track and used the same for the repair of its track,

the excavation being about twenty feet in depth; that in 1910 this loading track was thrown over south a distance of about twenty-five feet and fifty-one carloads of sand were loaded upon cars standing upon said track from the sand pit about 100 feet farther south; that said loading track has ever since 1910 remained in the same location where it was used that year, and in 1914 extended about 200 feet farther west, and a short track not connected with any other track was built at that time; that in 1899 plaintiff constructed a passing track on the south side of its main track, and at that time widened and filled the roadbed and put in and maintained a pipe culvert about the middle of the east forty, which culvert extends sixty feet south from the center of its main track; that at all times since the purchase of the south half of the northwest quarter of the southwest quarter plaintiff has occupied said tract of land by its main track and a portion of its passing track and roadbed; that in 1910 plaintiff sold timber from the northeast quarter of the southwest quarter, which timber was loaded upon cars on said loading track; that upon a few occasions during different years plaintiff has permitted cars to be loaded and unloaded upon said loading track.

The findings of fact are well supported and we shall spend no time in reviewing the evidence.

The court concluded that the deed issued to Maxcy on sale of 1899 became invalid by reason of failure by the grantee to obtain possession of the land within three years after recording the tax deed; that the quitclaim deed executed by plaintiff to the defendant *Land Company* in January, 1908, as well as the disclaimer made in the action, were invalid by reason of the mistake of the plaintiff in assuming that it did not have any interest in the land, and that said deed and the record thereof should be canceled so far as it pertains to the south half of the northwest quarter of the southwest quarter; that the defendant *Bystrom* was an in-

nocent purchaser of the northeast quarter of the southwest quarter, and that his title thereto should be confirmed and quieted except in so far as the deed to him from the *Land Company* attempts to convey the railroad right of way and tracks, which should be excepted and retained by plaintiff; and that this exception should include the original 100-foot strip and as much farther on each side as the sidetracks, grade, and culvert extend.

Judgment was ordered accordingly, with costs to defendant *Bystrom* against the plaintiff, and with costs in favor of plaintiff against the defendant *Land Company*.

1. On the appeal of defendant *Land Company* it is contended that the court erred in not finding that the plaintiff's officers, in executing the release and quitclaim, were inexcusably negligent, and in holding that the release and quitclaim to the *Land Company* were void by reason of mistake of the plaintiff.

The argument is that the plaintiff did not make sufficient investigation as to whether it had title before making the disclaimer and giving the quitclaim deed; it voluntarily settled the action, therefore is not entitled to relief; that there was no fraud and no such mistake as equity will relieve against.

We do not think the officers of the plaintiff can be said to be guilty of a want of ordinary care in not discovering that the plaintiff did own the land. When the action was commenced by defendant *Land Company* to quiet title the matter was referred to the legal department of the plaintiff. If the plaintiff had no interest in the land and no defense, it was necessary to disclaim in order to avoid the payment of costs. The legal department at once referred the matter to the land commissioner, who had general charge of the plaintiff's lands, and who informed the legal department that the plaintiff had no interest in the land. The officers of the legal department of plaintiff acted upon this information, dis-

claimed, and also gave a quitclaim deed. It appeared, however, that this particular land was in charge of the right-of-way commissioner, and the land commissioner of whom inquiry was made had no knowledge that the plaintiff owned it. It also appears that the plaintiff at the time owned a very large amount of land in Wisconsin. We are convinced upon the whole record that the court below was not in error in failing to find that the officers of the plaintiff were inexcusably negligent in executing the release and quitclaim deed.

We think no error was committed in holding that the release and quitclaim were void by reason of mistake of the plaintiff. It is well settled that equity, in a proper case, will relieve against mistake. The instant case is not one of settlement or compromise of a disputed right or claim. It is a clear case of mistake, and a mistake on the part of the plaintiff here which is excusable. It is not necessary that fraud be shown. Nor is it necessary that the mistake be mutual in all cases. In order to reform a contract on the ground of mistake the general rule is that the mistake must be mutual, or mistake on one side and fraud on the other. But where one deeds his property to another without consideration through mistake, equity will, in a proper case, grant relief by rescission. 9 Cyc. 394; *Clemens v. Clemens,* 28 Wis. 637; *Hurd v. Hall,* 12 Wis. 112; *Johnson v. Parker,* 34 Wis. 596; *Rider v. Powell,* 28 N. Y. 510; *Smith v. Mackin,* 4 Lans. (N. Y.) 41; 1 Story, Eq. Jur. (12th ed.) § 138*i.*

The authorities generally hold that equity will grant relief by rescission in proper cases for the mistake of one party as readily as for mutual mistake, where it is shown that it would be contrary to equity and against conscience to allow the enforcement of the contract.

Counsel seems to rely upon *Grant M. Co. v. Abbot,* 142 Wis. 279, 124 N. W. 264. A careful examination of that case will show that it does not support the contention. In that case relief was sought upon the ground of reformation

on account of mistake of one party in a detail of the contract and a promise, express or implied, to pay for work in the sixth story. The idea of the pleader was to state a cause of action for reformation on the ground of mutual mistake. No case of reformation was made, and the trial court allowed for the value of work done, not exceeding contract rates. The contract was made which the parties intended to make. The mistake which it was claimed gave right to rescission only went to a detail of the contract and was occasioned by the negligence of plaintiff, so the case is in no way in point here. 9 Cyc. 294.

We shall spend no more time discussing cases or referring to the established facts. It is sufficient to say that the instant case meets all the calls of a court of equity entitling the plaintiff to rescission for mistake.

The defendant *Land Company* did not plead a counterclaim asking that its title be quieted, but on stipulation all questions respecting the title of defendant *Land Company* as well as that of plaintiff were tried and determined below.

The court below held that the Maxcy tax deed, through which the defendant *Land Company* claimed, was void for failure of the *Land Company* to obtain possession of the land covered by such deed within three years after recording of said tax deed. It is further claimed, however, that there was no occupancy of the land in question from the time of the recording of the tax deed, May 18, 1903, and 1907, so that the tax deed carried constructive occupancy. It is said that there was occupancy except of the right of way. The court below found that the land was occupied by plaintiff outside of the right of way and there is ample evidence to support the finding.

Under the findings of the court below, sustained by the evidence, the tax deed was void under secs. 1187 and 1188, Stats., because the land was occupied by plaintiff and it had retained possession for more than three years after recording

of the tax deed, the possession of a part being possession of the whole. *Laffitte v. Superior,* 142 Wis. 73, 125 N. W. 105; *Vicker v. Byrne,* 155 Wis. 281, 143 N. W. 186. We are therefore of opinion that the tax deed to the *Land Company* was invalid and that the release and quitclaim were given by the plaintiff under mistake as to the plaintiff's interest in the land, and that such deed and release should be set aside as to the south half of the northwest quarter of the southwest quarter of section 9, town 47 north, of range 5 west.

The *Land Company* also complains about judgment against it for costs. The action is in equity and some at least of the important issues in the case were contested by the *Land Company,* notably the validity of the Maxcy tax deed and the validity of the release and quitclaim to it in the suit by the *Land Company* to quiet title. Costs in such cases are in the discretion of the court, and we cannot say that the discretion of the court was abused.

2. The only remaining question is whether the title of defendant *Bystrom* to the northeast quarter of the southwest quarter of section 9, town 47 north, range 5 west, should be confirmed in him. The court below held that *Bystrom* was an innocent purchaser and quieted title in him. The court found "that *Bystrom* did all that an ordinarily careful person would usually do in ascertaining what interest or right the company claimed in the land." The record title appeared to be in the *Land Company,* and *Bystrom* examined the title before he purchased. He also examined the land and found some evidence of plaintiff's possession and inquired of plaintiff's land commissioner as to what the rights of plaintiff were, and was informed that plaintiff did not own the land.

It is clear upon the established facts that the right of way of the plaintiff over the land in question did not pass by the deeds to either of the defendants. *Kutz v. McCune,* 22 Wis. 628; *Smith v. Hughes,* 50 Wis. 620, 7 N. W. 653; *State ex*

*rel. Att'y Gen. v. Frost,* 113 Wis. 623, 88 N. W. 912, 89 N. W. 915.

It follows that the court below was right in holding that defendant *Bystrom* got a good title to the northeast quarter of the southwest quarter of section 9, town 47 north, range 5 west, except the right of way of the plaintiff 130 feet wide across said land, as described in the findings and judgment.

*By the Court.*—The judgment is affirmed on both appeals.