LANGER, Respondent, vs. STEGERWALD LUMBER COMPANY, Appellant.

*April 4—May 8, 1951.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

*D. V. W. Beckwith* of Madison, for the respondent.

HUGHES, J. The appellant leased the premises to the respondent in February, 1941, for a term of ten years. The lease contained the following provision:

". . . that the lessee shall have the first option to purchase said property at a price of $9,000, and that if lessor desires to sell said premises to another he shall first give the lessee sixty days' notice in writing of intent to sell."

Appellant lays great stress upon the word "first" preceding "option" and cites many cases from other jurisdictions dealing with "first privilege" and "first right" to re-lease rental property. Appellant relies upon *R. I. Realty Co. v. Terrell* (1930), 254 N. Y. 121, 123, 124, 172 N. E. 262, where the language under consideration was, "Said party of the second part is given first privilege to buy said property for the sum of ($14,000) fourteen thousand dollars." The court said:

"In construing the clause in question, the court is required to give some meaning to all the words used. To construe the clause in accordance with the contention of the respondent would require that the word 'first' be eliminated. With that word eliminated, the privilege to buy would be absolute and enforceable. [Citing cases.] Therefore, it must have been used to prevent the agreement from constituting an absolute option to sell. The phrase 'first privilege to buy' and the words 'privilege to buy' have an entirely different meaning; one is conditional and the other absolute. This court has decided in actions for specific performance that agreements substantially like the one in question could not be enforced in an action in equity."

To the same effect, see *Burbach v. Sinram* (1924), 206 App. Div. 773, 237 N. Y. 600, 143 N. E. 759.

We are of the opinion that the New York court overemphasizes the word "first."

In *Tantum v. Keller* (1924), 95 N. J. Eq. 466, 469, 123 Atl. 299, where the option provision in a lease was, "First privilege is extended to said parties of the second part to purchase said property at any time during this lease term at a price of $5,500," after distinguishing a number of other cases, the court said:

"The facts in the present case are different; it is a right or privilege of purchase, not a renewal of lease, and the additional language in the clause seems to me to be of controlling significance.

"The most significant thing I deem to be the fixing of the price. The fact that the clause is in the lease at all (whichever way it be construed) shows that the lessee had wanted an option—an absolute right to purchase. Construed as such option, the fixing of the price and all the rest of the paragraph is perfectly natural and proper. But construed as a mere conditional right, it follows that the lessor was unwilling to give the option or absolute right, and we have this situation: That an owner, who was unable or unwilling to decide then and there whether or not she would be willing to sell at all during the next five years for a certain fixed price,

was nevertheless able and willing to decide that if, during the next five years, she did desire to sell, she would sell at that certain fixed price. Such a situation is possible, but to my mind is highly improbable. Since she would not bind herself to sell, why should she bind herself to a price when conditions might change materially in five years? The natural and probable thing under those circumstances would be to agree to give the lessee the first opportunity to buy at the price and terms she should then be willing to take from anyone else."

We think this reasoning more sound; the purpose of construction should be to ascertain the intention of the parties to the contract as expressed by all of the language rather than to put a trick interpretation or twist upon one word.

Appellant concedes that the language in the instant contract is sufficient to compel it, if it wished to sell at all during the ten years following February, 1941, to give respondent an opportunity to buy for $9,000, but that it is not sufficient to impose a duty upon appellant to sell at all.

It would seem to be as reasonable to contend that if the owner had a chance to sell to another for any figure over $9,000, it might ignore respondent because it had only promised to give him first chance if it decided to sell for $9,000.

Counsel for appellant relies also on *Sander v. Schwab* (1925), 315 Ill. 623, 624, 146 N. E. 509. We do not think the language there is comparable to that used in the lease here construed. In that case the contract read: "It is understood and agreed that the party of the second part shall, in case of a *bona fide* sale of said premises, have a first option to purchase during the life of this lease at a price of $13,500." The clause "in case of a *bona fide* sale of said premises" indicated an intention on the part of the lessor to reserve the right not to sell at all during the term of the lease.

As the trial court pointed out, the lessor here might very well sell a second option to be valid in the event that sixty days' notice was served upon respondent and he failed to

exercise his option. That in itself might well explain the use of the term "first option" in the lease.

Counsel asks us to construe this contract as though it read: "If lessor desires to sell said premises at any time during this lease, the lessee shall have the first option to purchase at a price of $9,000. No sale to another shall be made without giving sixty days' notice, etc."

We conclude that the language, given its ordinary meaning, clearly indicates the intention to give an option to the lessee which might be exercised at any time by him, but reserving in the lessor the right to accelerate the sale by giving notice that it might sell to another if lessee did not exercise his option within sixty days.

*By the Court.*—Order affirmed.