LANGER, Respondent, vs. STEGERWALD LUMBER COMPANY, Appellant.*

*October 8—November 5, 1952.*

\* Motion for rehearing denied, with $25 costs, on January 6, 1953.

384

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

*D. V. W. Beckwith* of Madison, for the respondent.

CURRIE, J.  The defendant raises the following contentions on this appeal:

(1) That the defendant is entitled to show by parol testimony that the option to purchase was conditional upon the seller desiring to sell the property.

(2) That the evidence does not sustain the trial court's finding that a mutual mistake was made as to the description.

(3) That plaintiff did not properly exercise the option to purchase because in his notice to exercise the option plaintiff used the original description contained in the lease.

(4) That the cause of action for reformation is barred by the six-year statute of limitations.

The option clause in the lease provided:

". . . that the lessee shall have the first option to purchase said property at a price of $9,000, and that if lessor desires to sell said premises to another he shall first give the lessee sixty days' notice in writing of intent to sell."

The defendant interposed a demurrer to the complaint, and an order was entered on the 21st day of December, 1950, overruling the demurrer. An appeal was taken from such order to this court and the order appealed from was here affirmed. *Langer v. Stegerwald Lumber Co.* (1951), 259 Wis. 189, 47 N. W. (2d) 734. On this second appeal the defendant maintains that the testimony of the parties clearly establishes that the option was not intended by the parties to be an absolute option, but only an option to protect the plaintiff in the event of sale of the property by the defendant.

However, the defendant is precluded by the rule of the *"law of the case"* from now again raising the issue that the option was not absolute, but conditional. *Foster v. Rowe* (1907), 132 Wis. 268, 270, 111 N. W. 688; *Cape v. Plymouth Congregational Church* (1906), 130 Wis. 174, 179, 109 N. W. 928; *McCord v. Hill* (1903), 117 Wis. 306, 308, 94 N. W. 65.

In the former opinion of this court we construed the option as follows (259 Wis. p. 193):

"We conclude that the language, given its ordinary meaning, clearly indicates the intention to give an option to the lessee which might be exercised at any time by him, but reserving in the lessor the right to accelerate the sale by

giving notice that it might sell to another if lessee did not exercise his option within sixty days."

By the foregoing construction of the lease, we in effect held that there was no ambiguity in the language of the option clause which required resort to parol evidence as to the intention of the parties in order to construe the same, and that the language employed was so clear that it was only capable of the construction there placed upon it by the court.

This brings us to the second point raised by the defendant, that the evidence does not sustain the trial court's finding that a mutual mistake was made as to the original description set forth in the lease. In order to pass upon this point it is necessary to examine the pertinent facts in the record bearing on the issue.

The defendant in 1940 was the owner of a filling-station property located at the northwest corner of Main and Vine streets in the village of Sun Prairie. The north line of Main street constituted the southern boundary line of the premises, and the west line of Vine street formed the east boundary. The angle formed by Main and Vine streets at the southeast corner of the premises was slightly less than 90 degrees, and the premises were in the shape of a trapezium with no side being parallel to any of the other three sides.

In the summer of 1940, the plaintiff and defendant began negotiations for a lease of this filling-station property. They agreed that the defendant would remodel the small building already located on the premises by adding thereto an office and two service bays to the west side of the building; that it would move the gasoline pumps in a southerly direction toward Main street; and that it would surface with concrete all that part of the property in the front of the building. Construction costs of the building were computed by the defendant and a rental of $70 a month was agreed upon.

Early in the negotiations, before the ultimate size of the building as enlarged by the proposed addition had been deter-

mined upon, the defendant's officers measured the premises and the description so obtained from such measurements was inserted in the written lease which was drafted in February, 1941, by such officers of the defendant. The date in February on which the lease was signed was not inserted, but the lease was for a ten-year term commencing January 1, 1941. The remodeling of the building had been completed about the middle of January, 1941, and the plaintiff had moved in about that time.

The plaintiff testified that shortly after the lease was signed and before he put it away in his strongbox in the bank, he looked it over and he then paced off the seventy-foot length specified for the south boundary line from the corner of Main and Vine streets west along Main street; then he paced north on Vine street from the corner the sixty-two feet eight inches specified for the east boundary line; and that he then sighted along both sides of the building, that is, the north side and the west side, and assumed that the lines met in the back and figured that there was ample land for his purpose in the building he occupied. There is nothing in the evidence to indicate that there was anything to put the plaintiff on notice that the description in the lease was erroneous.

In the summer, or early fall, of 1950, the parties were negotiating for the renewal of the lease and were unable to agree upon a rental. The defendant then attempted to lease the premises to the Cities Service Company, the lease to start at the termination of plaintiff's lease. The plaintiff thereupon exercised his option to purchase on October 3, 1950, by serving a notice to such effect upon the defendant, and by tendering the $9,000 purchase price specified in the option, which tender the defendant refused.

About the time the option was exercised, and prior to the commencement of this action, the plaintiff was advised by a possible purchaser of the property that the description in the lease did not fit the property being used by the plaintiff. Following this information, the plaintiff, through his attor-

ney, had the property surveyed and it was discovered for the first time that the description in the lease did not cover all of the property the parties intended to cover by the lease and did not include all of the property being used, and which had been used, by the plaintiff during all of the period of the lease. The lease description omitted a wedge-shaped parcel constituting the westerly portion of the service-station building.

Plaintiff testified that it was his intention to rent from the defendant all of the building and the land it occupied and all of the land south of the building to Main street. One of defendant's officers testified that he told plaintiff when the officers of defendant measured the land the first time that the measured parcel would be the land that defendant could spare, but admitted that the defendant extended the building farther to the west so that it occupied more land. The defendant's officers further testified that while they intended the lease to cover the entire building, they did not intend the option to cover any more than the land described in the lease.

This secret intention of the officers of defendant to have the option cover less than the lease, was not binding on the plaintiff. The rule of law in regard to secret intentions of a party to a contract is set forth in *Beers v. Atlas Assurance Co.* (1934), 215 Wis. 165, 175, 253 N. W. 584:

"It has been affirmed over and over again that secret intentions of the parties to a contract are wholly immaterial. It is not what the parties secretly intended, but it is what they manifested to each other by words or conduct that determines their rights."

The conduct manifested by the officers of defendant was in marked contrast to their secret intentions. They built and leased a filling station to plaintiff for ten years, allowed the plaintiff to occupy all of the building built for him, and all of the land south and east of the building under claim of right. No question was ever raised. At no time did the defendant ever indicate by word or conduct that either the lease, or

the option provision in the lease, covered a lesser amount of land than that which was occupied by the building and the land south of the building. It is highly improbable that a lessee in the position of the plaintiff would have knowingly taken an option to purchase a seven-eighths portion of the service-station building he was occupying as lessee, especially in view of the fact that there was no partition wall marking off the omitted portion.

The trial court found that a mutual mistake had been made and the judgment reforms the description so as to embrace all of the land on which the building stands and all the land south from the building to Main street. It is our conclusion that there was clear and convincing evidence upon which to base such finding of the trial court that a mutual mistake had been made in the description appearing in the lease.

In plaintiff's written notice of October 3, 1950, to the defendant, in which plaintiff elected to exercise his option to purchase, there was set forth a description of the premises as to which plaintiff exercised his option, such description being that appearing in the lease. Defendant contends that the plaintiff is not now entitled to specific performance as to the corrected description since plaintiff never exercised the option to purchase such enlarged description.

The plaintiff did not discover the error in the description until about one month before the notice of election to exercise the option was given on October 3, 1950. There was not sufficient time available before the expiration of the lease to permit the plaintiff to go into court and secure a reformation of the description before exercising the option to purchase. The plaintiff therefore served the notice of election to exercise the option and then instituted the present suit to compel specific performance and to reform the description on the ground that the original description was included in the lease through mutual mistake.

The learned trial court in its memorandum decision in this case stated:

"The plaintiff made an unqualified acceptance of the option. The option given on the property described in the lease was accepted, the contract was complete; there has been an offer and an unqualified acceptance and a proper consideration. The plaintiff now seeks for a judicial decree reforming the description contained in the lease, because of mutual mistake of the parties in respect to the description.

"If the facts warrant such reformation, the court has jurisdiction to make it and to grant specific performance. It is not making a new contract for the parties, but it is making a new writing to express the actual intended contract of the parties. Many executed contracts, such as land contracts, mortgages, etc., where it is alleged that the descriptions contained therein are erroneous, not intended by the parties, are corrected and foreclosed in the same action by judicial decree. An executed option contract must stand on the same footing."

We fully concur in the conclusion reached by the trial court on this point.

The final contention raised by defendant is that if plaintiff ever had a cause of action for reformation of the description of the lease, such cause of action accrued on delivery of the lease in February, 1941, and therefore is barred by the six-year statute of limitations, sec. 330.19 (3), Stats. On the other hand, it is the position of the plaintiff that the ten-year statute, sec. 330.18 (4), applies.

Sec. 330.18 (4), Stats., provides:

"Within ten years: . . .
"(4) An action which, on and before the twenty-eighth day of February in the year one thousand eight hundred and fifty-seven, was cognizable by the court of chancery, when no other limitation is prescribed in this chapter."

Sec. 330.19 (3), Stats., reads:

"Within six years: . . .
"(3) An action upon any other contract, obligation, or liability, express or implied, except those mentioned in sections 330.16 and 330.18."

An action to reform a written instrument is an action in equity which was cognizable by a court of chancery prior to the year 1857.

In *Garage Equipment Mfg. Co. v. Danielson* (1914), 156 Wis. 90, 144 N. W. 284, the court had before it a suit in equity to reform a building contract instituted in the circuit court for Milwaukee county. One of the questions in the case was whether the plaintiff should not have set forth the affirmative defense of a mutual mistake in the execution of the contract in a prior action then pending in the civil court of Milwaukee county in which the defendant was suing plaintiff. This court held that such affirmative defense of mutual mistake was not available without reformation of the contract, that reformation of the contract was a proceeding in equity, and therefore the action to reform was properly brought in the circuit court, inasmuch as the civil court had no jurisdiction over equitable actions.

In the cases of *Parker v. Kane* (1854), 4 Wis. *1, and *Milwaukee County v. City of Milwaukee* (1951), 259 Wis. 560, 49 N. W. (2d) 902, this court held that the ten-year statute applied in an action for reformation of a deed. In the instant case the option, together with plaintiff's election to exercise the same, constituted a contract for the sale of real estate, and by analogy, if the ten-year statute applies to the reformation of a deed, it ought to also apply to the reformation of a contract for sale of land. It is therefore our conclusion that the ten-year statute of limitations set forth in sec. 330.18 (4), applies.

Inasmuch as it is our conclusion that the ten-year statute, rather than the six-year statute of limitations, is applicable to plaintiff's cause of action for reformation of the description, it becomes unnecessary for us to determine whether such cause of action arose upon delivery of the lease, as contended for by the defendant, or upon plaintiff's exercise of the option to purchase as maintained by the plaintiff, because

plaintiff instituted the action within ten years after the defendant's delivery of the lease.

*By the Court.*—Judgment affirmed.

The following memorandum was filed January 6, 1953:

CURRIE, J. (*on motion for rehearing*). Counsel for defendant in support of their motion for rehearing complain that in our original opinion we treated the cause of action for reformation purely as a question of fact, when it was the position of defendant that plaintiff did not prove a mutual mistake of fact as a matter of law.

This court in *Chicago, St. P., M. & O. R. Co. v. Bystrom* (1917), 165 Wis. 125, 161 N. W. 358, laid down the rule with respect to when it is proper for a court to reform a contract for mistake as follows (p. 133):

"In order to reform a contract on the ground of mistake the general rule is that the mistake must be mutual, or mistake on one side and fraud on the other."

The facts of the instant case, with respect to the mistake which occurred in the lease description, clearly established a case for reformation within this rule.

Defendant's counsel cite a number of cases which hold that a party is not entitled to reformation if he failed to use due diligence in discovering facts which by the exercise of ordinary care he would have discovered, or he fails to make observations of things which are readily observable. We did not review and distinguish these cases because we considered that they had no application to the instant case because there was nothing to put the plaintiff on notice that there was an error in the description.

The case of *Bostwick v. Mutual Life Ins. Co.* (1903), 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705, and similar cases are cited by counsel, which cases hold that, if

one makes a written contract with another, he takes upon himself the duty of acting intelligently and exercising ordinary care to inform himself of its provisions before he becomes bound thereby and, if he fails so to do, his negligence bars him from securing reformation. However, in the within case plaintiff knew that the lease he signed did contain a description of the premises, and his reading of such description would not have apprised him that it was erroneous.

*By the Court.*—Motion for rehearing denied with costs.