29 Wis.2d 339 (1966)
MARION, Executrix, Respondent,
v.
ORSON'S CAME CENTERS, INC., Appellant.[*]
Supreme Court of Wisconsin.
November 30, 1965.
January 4, 1966.
*342 For the appellant there was a brief by Posner & Rubin, attorneys, and Francis X. Krembs of counsel, all of Milwaukee, and oral argument by Mr. Krembs.
For the respondent there was a brief by Michael Klein, attorney, and Morris Karon of counsel, both of Milwaukee, and oral argument by Mr. Klein.
GORDON, J.
The disputed endorsement on the stock certificate consists of but three sentences. We are obliged to give the expressions used their common and ordinary meanings. State ex rel. Siciliano v. Johnson (1963), 21 Wis. (2d) 482, 124 N. W. (2d) 624; Langer v. Stegerwald Dumber Co. (1951), 259 Wis. 189, 47 N. W. (2d) 734. It is not the office of a judicial tribunal to find a meaning which is contrary to the language used in an agreement. Siler v. Read Investment Co. (1956), 273 Wis. 255, 261, 77 N. W. (2d) 504.
*343 We are of the opinion that the import of the stock certificate's endorsement is pellucid and that the third sentence thereof governs this case. That sentence commences with the words, "In the event of the death of the stockholder, . ." This is precisely the event that occurred here.
There are four basic arguments advanced by the respondent in support of her position. First, it is urged that death was an "involuntary" event which resulted in the termination of the employment, as contemplated in the second sentence of the endorsement. We are persuaded that while the second sentence covers such things as resignation, firing, or discharge, it does not encompass death; this is because death is expressly covered in the third sentence of the endorsement. The problem presented in this argument is analytically related to the matter which was presented to the court in Kraus v. Wisconsin Life Ins. Co. (1965), 27 Wis. (2d) 611, 135 N. W. (2d) 329, where we considered whether the event of death was included in the phrase "total disability."
Secondly, the respondent urges that the final sentence of the endorsement should be regarded as being repugnant to the previous provisions of the endorsement and treated as surplusage. This contention rests in part upon the recognized rule of construction which directs that any doubt as to the meaning of an instrument is to be construed against the party who drafted it. Koranda v. O'Connor (1964), 23 Wis. (2d) 51, 56, 57, 126 N. W. (2d) 568; Estate of Schmitz (1962), 17 Wis. (2d) 412, 420, 117 N. W. (2d) 249; Strong v. Shawano Canning Co. (1961), 13 Wis. (2d) 604, 609, 109 N. W. (2d) 355. However, we find no pervading ambiguity in the endorsement, and thus there is no occasion for interpreting the terminology adversely to the draftsman. For the same reason, we are unable to treat the third sentence as surplusage.
*344 A third argument advanced by the respondent is that the last sentence of the endorsement was designed to enable the corporation to procure the stock certificate from the "heirs, assigns or legal representatives" of Mr. Marion in the event, after his death, that the certificate fell into the hands of one who refused to surrender it to the corporation. It is urged that this construction of the endorsement is one "which gives harmonious effect to all its covenants," to use the words of Bitker & Gerner Co. v. Green Investment Co. (1956), 273 Wis. 116, 120, 76 N. W. (2d) 549. In our opinion, the foregoing viewpoint adopts a strained construction of the terms used in the endorsement.
It is true that under the rule discussed in the Bitker & Gerner Case where there are two permissible interpretations of a contract, the court will adopt the one which tends to harmonize all the clauses of the contract; however, this argument presupposes the existence of a conflict in permissible interpretationsa circumstance which we do not find to be existent in the instant case.
The fourth argument advanced by the respondent is that the true meaning of the endorsement is demonstrated by the fact that the corporation carried a policy of insurance on Mr. Marion's life in a sum comparable to that which would enable the corporation to repurchase his stock by using the proceeds of such policy after his death. This is not a controlling argument for the reason that there was no legal irregularity in the corporation's having insured Mr. Marion's life only for the purpose of enabling it to be in a position to do that which it had an option to do. There is nothing implicit in the corporation's having carried insurance on Mr. Marion's life which establishes that the corporation thereby acknowledged that it would be bound to purchase Mr. Marion's stock upon his death (under the second sentence) as opposed to its having the option to do so (under the third sentence).
In our opinion, all of the arguments of the respondent fail in light of the palpably plain language employed in *345 the endorsement itself. There is applicable the rule set forth long ago in Wisconsin Marine & Fire Ins. Co. Bank v. Wailkin (1897), 95 Wis. 111, 115, 69 N. W. 354:
"It must be borne in mind that the office of judicial construction is not to make contracts or to reform them, but to determine .,? what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they so, fit to use."
The court is fully mindful of the hardship which may be visited upon the widow of Mr. Marion by this ruling. There is a caustic saying which perhaps is befitting the result of this case: "In a thousand pounds of law I find not a single ounce of love."
We consider that our holding, however stringent, is necessitated by the manifest clarity of the language of the endorsement. We note, however, that the corporation has expressly conceded that the plaintiff will henceforth be free to dispose of the stock without the restriction of the endorsement.
By the Court,Judgment reversed.
NOTES
[*] Motion for rehearing denied, with costs, on March 1, 1966.