CARMELITA JONES, Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION, Appellee.
No. 06-CV-1437
Court of Appeals of District of Columbia.
Argued December 11, 2007
Decided January 30, 2008[*]
H. Vincent McKnight, Jr., for appellant.
Andrew J. Marcus, with whom Joseph S. Crociata and Andrew Butz were on the brief, for appellee.
Before REID and FISHER, Associate Judges, and BELSON, Senior Judge.
FISHER, Associate Judge.
Appellant Carmelita Jones asks us to reverse the Superior Court's orders granting summary judgment to appellee National Railroad Passenger Corporation ("Amtrak") and denying her motion for reconsideration. Discerning no legal error or abuse of discretion, we affirm.

I. Factual Background
Ms. Jones worked as a coach cleaner for Amtrak from March 16, 1981, until June 24, 2003. She performed a variety of cleaning duties, and sometimes she was asked to vacuum the passenger coaches. In January 2003, Ms. Jones began to experience pain in her right arm. At first, the pain was intermittent: "It might hurt today, but not hurt tomorrow." Sometime in March 2003, Ms. Jones told one of her supervisors that her "arm hurt" and asked to be relieved from vacuuming duty that day. She made this same request "eight or nine times" over the course of her remaining employment and each time her supervisor granted the request and assigned her to different duties. Ms. Jones testified that she would inform a supervisor that "I can't vacuum today, my arm hurts, I'd rather clean today, and they would let me clean."
When Ms. Jones made these requests, she would sometimes attribute the pain to arthritis or even old age. She never told her supervisors that she "could no longer vacuum ever," nor did she request reassignment from her position as a coach cleaner. In fact, Ms. Jones agreed that she "could do what [she] needed to do, other than vacuum." She never told her supervisors that she thought the problems with her arm and shoulder were caused by her work or that her work was making her arm worse. She also stated that she did not know the cause of her pain until she visited Dr. Pyfrom in June 2003.
Ms. Jones did, however, see other doctors about her arm and shoulder pain before consulting Dr. Pyfrom. For example, on January 25, 2003, she left work,[1] instead of working an overtime shift, and went to the emergency room. Throughout her treatment at the ER she "den[ied] any known injury or overuse." Ms. Jones then visited her primary care physician, Dr. Shepard-Lewis, on February 4, 2003, March 5, 2003, and March 26, 2003. The records of these four visits do not contain any reference to Ms. Jones's work as a coach cleaner, and Ms. Jones conceded that she did not discuss her job with her doctor.
The records from three of the visits do contain instructions for Ms. Jones to consult with an orthopaedic specialist. However, she failed to do so until June 2, 2003, when she visited Dr. Pyfrom. After an MRI conducted on or about June 10 revealed a rotator cuff tear, Dr. Pyfrom scheduled Ms. Jones for arthroscopic surgery. Ms. Jones continued working as a coach cleaner until June 24, 2003. Dr. Pyfrom performed the surgery on June 25, 2003, and a second surgery on November 13, 2003. Ms. Jones returned to work for Amtrak under its "Right Care Day One" modified duty program from March 13, 2004, until May 5, 2004. She has since retired on disability.

II. Procedural Background
On October 27, 2004, Ms. Jones filed a civil complaint in the Superior Court alleging that Amtrak had violated the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq., when it "allowed Ms. Jones to continue her duties over a period of six months despite their awareness of her aggravated shoulder discomfort[,]" failed to "evaluate [her] condition to determine whether she could continue to function as a coach cleaner[,]" "failed to refer her to medical treatment," and "failed to re-assign" her to "jobs suitable to her medical condition."
Amtrak moved for summary judgment on July 8, 2005, and Ms. Jones filed her opposition on July 25, 2005. The trial court granted summary judgment on October 17, 2005, "because the Plaintiff has failed to sufficiently demonstrate that her injury might be causally connected to her work at National Railroad." The court denied Ms. Jones's motion for reconsideration, stating: "Plaintiff has offered insufficient evidence and argument to convince the Court that its October 17, 2005, Order should be vacated."

III. Principles Governing Our Review
"Summary judgment is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." Blodgett v. University Club, 930 A.2d 210, 217 (D.C. 2007) (citations and quotation marks omitted). "In reviewing a trial court order granting a summary judgment motion, we conduct an independent review of the record . . . [and] we must view the record in the light most favorable to the non-moving party[.]" Id. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Id.
"We can affirm the judgment on a different ground [than that relied upon by the court below] if the appellant [will] suffer[ ] no procedural unfairness  that is, [if it] had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual and legal presentation with respect thereto." Nat'l Assoc. of Postmasters of the United States v. Hyatt Regency Washington, 894 A.2d 471, 474 (D.C. 2006) (citations and quotation marks omitted).
In addition, we review a trial court's denial of a motion for reconsideration for an abuse of discretion. Blodgett, 930 A.2d at 232 (citing Tobin v. John Grotta Co., 886 A.2d 87, 90 (D.C. 2005)); see Berkow v. Lucy Webb Hayes Nat'l Training School for Deaconesses and Missionaries Conducting Sibley Memorial Hospital, 841 A.2d 776, 780 (D.C. 2004) (citing District No. 1-Pacific Coast District v. Travelers Cas. & Sur. Co., 782 A.2d 269, 278 (D.C. 2001) (orders denying Rule 59 (e) and Rule 60 (b) "motions for reconsideration" are reviewed under abuse of discretion standard)).

IV. Analysis
Under FELA, Amtrak is liable in damages to its employees for any injury "resulting in whole or in part from the negligence of any of [its] officers, agents, or employees." 45 U.S.C. § 51. "That FELA is to be liberally construed . . . does not mean that it is a workers' compensation statute." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994). The Supreme Court has "insisted that FELA does not make the employer the insurer of the safety of [its] employees while they are on duty. The basis of [the employer's] liability is . . . [its] negligence, not the fact that injuries occur." Id. (internal quotation marks and citation omitted); accord, Keranen v. Nat'l Railroad Passenger Corp., 743 A.2d 703, 711 (D.C. 2000).
Among other things, Amtrak "has a duty to assign employees to work for which they are reasonably suited . . . [and it] breaches that duty if it negligently assigns an employee to perform work beyond his capacity." Fogg v. Nat'l Railroad Passenger Corp., 585 A.2d 786, 789 (D.C. 1991) (citations and quotation marks omitted). "The railroad is negligent if it knew or should have known that its assignment exposed the employee to an unreasonable risk of harm." Id. In other words, the jury must focus on whether "the Defendant knew or should have known of the Plaintiff's diminished work capacity and in spite of that knowledge. . . unreasonably continued to assign Plaintiff to tasks that Defendant knew or should reasonably have known would aggravate her physical condition." Id. (approving jury instructions). See Nat'l Railroad Passenger Corp. v. Krouse, 627 A.2d 489, 495 n.10 (D.C. 1993) (construing Fogg).
The plaintiff "must put on expert testimony to establish the applicable standard of care if the subject dealt with is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." Nat'l Railroad Passenger Corp. v. McDavitt, 804 A.2d 275, 285 (D.C. 2002) (citations omitted).
Applying these standards, we conclude that Ms. Jones failed to put forth "sufficient evidence . . . [upon] which the jury could reasonably find," Blodgett, 930 A.2d at 217 (citations omitted), that Amtrak had notice of her diminished work capacity or breached the applicable standard of care.[2] Therefore, summary judgment was proper on two independently sufficient grounds.

A. Notice
The evidence, viewed in the light most favorable to Ms. Jones, establishes that on "eight or nine" occasions she asked her supervisor to relieve her of vacuuming duty because her "arm hurt." Ms. Jones acknowledges that, when she made these requests, she would sometimes attribute the pain to arthritis or old age, but never attributed it to her duties as a coach cleaner. Nonetheless, every time she made such a request, her supervisor took her off vacuuming duty.
Ms. Jones argues that this accommodation was insufficient because Amtrak had a duty to do more than "change[] her job duties" given their notice of her "diminished capacity." The evidence does not support these assertions. First, each time Ms. Jones made a request, she specifically limited it to relief from vacuuming. Second, Ms. Jones stated that she never requested a reassignment from her coach cleaner position and none of her other job duties presented a problem for her. In fact, Ms. Jones would specifically ask for "clean[ing]" duties and described her typical request as follows: "I can't vacuum today, my arm hurts, I'd rather clean today, and they would let me clean." Third, Ms. Jones admits that she never told Amtrak that she could no longer vacuum, that her arm pain was caused by her job duties, or that her duties were making the pain worse.
To survive summary judgment on a negligent assignment claim, Ms. Jones must present "sufficient evidence . . . [upon] which the jury could reasonably find," Blodgett, 930 A.2d at 217, among other elements, that Amtrak "knew or should have known that its assignment exposed [her] to an unreasonable risk of harm." Fogg, 585 A.2d at 789. Ms. Jones herself conceded that she was not aware of the relationship between her job duties and her pain until she consulted Dr. Pyfrom in June 2003. Before that point, however, Ms. Jones had ample opportunity to notify Amtrak of her medical situation and she repeatedly failed to do so. In fact, even after Dr. Pyfrom scheduled her surgery, Ms. Jones continued to work as a coach cleaner without providing Amtrak with additional information. "They knew what day I was leaving for the surgery. But that's it." In sum, Ms. Jones has not produced sufficient evidence that Amtrak "knew or should have known" that her normal job assignments exposed Ms. Jones to an unreasonable risk of harm. Therefore, Amtrak is entitled to judgment as a matter of law.

B. Standard of Care
Ms. Jones also failed to proffer sufficient evidence of an applicable standard of care requiring Amtrak to evaluate her physical capacity or to refer her for medical treatment in circumstances like these. Although Jones argues that Amtrak's internal policies "establish an adequate standard," we have held that unpublished, internal procedures "cannot embody the standard of care under a negligence per se theory." Clark v. District of Columbia, 708 A.2d 632, 636 (D.C. 1997). Such internal procedures may be "admissible as bearing on the standard of care," but "expert testimony was still required to establish that the [internal policies] . . . embodied the national standard of care and not a higher, more demanding one." Id. The employer's duty in a situation like this is not so "amenable to common sense" or sufficiently "within the realm of common knowledge and everyday experience" that a jury may resolve the issue of negligence without guidance from an expert. McDavitt, 804 A.2d at 285 (citations and quotation marks omitted).
Ms. Jones's failure to proffer expert testimony establishing the applicable standard of care also entitles Amtrak to judgment as a matter of law.

V. Conclusion
For the foregoing reasons, the judgment of the Superior Court is hereby
Affirmed.
NOTES
[*] The decision in this case was originally released as a Memorandum Opinion and Judgment on January 30, 2008. Pursuant to D.C. App. R. 36 (c), we granted the motion to publish filed by appellee National Railroad Passenger Corporation.
[1] On this instance, Ms. Jones was scheduled to work a double shift at "S&I," which is the "maintenance facility out in Ivy City," as opposed to her usual assignment at Union Station with her regular supervisors.
[2] In its order granting summary judgment, the trial court found insufficient evidence of causation. We consider this issue to be a close one and therefore affirm on alternative grounds. See Nat'l Assoc. of Postmasters of the United States, 894 A.2d at 474. These grounds were raised in the trial court and fully debated before us.