Nadine WILBURN, Appellant,

v.

DISTRICT OF COLUMBIA,
et al, Appellees.

No. 07–CV–287.

District of Columbia Court of Appeals.

Argued Sept. 5, 2008.
Decided Oct. 9, 2008.

Gregory L. Lattimer, Washington, for appellant.

Edward E. Schwab, Deputy Solicitor General, Ret., with whom Linda Singer,

Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General for the District of Columbia, and Donna M. Murasky, Acting Deputy Solicitor General, were on the brief, for appellee District of Columbia.

Joel P. Bennett was on the brief for appellee Kelvin Robinson.

Before KRAMER, FISHER and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

■ Appellant Nadine Wilburn served for a time as the Interim Director of the District of Columbia Office of Human Rights ("OHR") and, in 2003, she was on the short list of candidates being considered for appointment as permanent OHR Director. After then-Mayor Anthony Williams appointed someone else to the position, Wilburn sued appellees—the District of Columbia and Kelvin Robinson, the Mayor's Chief of Staff—under the District

of Columbia Whistleblower Protection Act (the "DC–WPA").[1] She alleged that Robinson engineered Wilburn's non-appointment in retaliation for statements she made to the Council of the District of Columbia (the "Council") criticizing the performance of Curtis Lewis & Associates ("CLA"), a law firm that held a contract with OHR to perform reviews of discrimination complaints and draft determination letters.[2] The Superior Court granted defendants'/appellees' motion to dismiss for failure to state a claim, holding that the complaint did not causally link Wilburn's alleged protected disclosure to the personnel action complained of, and thus failed to state a prima facie case of retaliation.[3] We affirm the judgment dismissing the complaint, although on a basis different from the one on which the trial court relied. Specifically, we hold that Wilburn's statements to the Council did not constitute a "protected disclosure" within the meaning of the DC–WPA.[4]

---

1. D.C.Code § 1–615.53 (2001) provides that "[a] supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C.Code § 1–615.54(a) (2001) permits an employee aggrieved by a violation of section 1–615.53 to bring a civil suit.

2. In a September 30, 2004 report entitled "Results of the Auditor's Examination of the Processes Leading to the Award of a Sole Source, Non–Competitive Contract, and Blanket Purchase Agreement to Curtis Lewis & Associates" (the "District Auditor's Report"), the District of Columbia Auditor concluded that the contract had been awarded to CLA "using questionable competitive procedures," with a former OHR Director and the Executive Office of the Mayor having "yielded to . . . perceived political influence."

3. A public employee makes a prima facie case by showing that the protected disclosure was a contributing factor in the prohibited person-

nel action, while a jury must find "but for" causation in order to impose liability. *Johnson v. District of Columbia*, 935 A.2d 1113 (D.C.2007).

4. A "[p]rotected disclosure" is:

any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences:
(A) Gross mismanagement;
(B) Gross misuse or waste of public resources or funds;
(C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
(D) A violation of a federal, state, or local law, rule or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
(E) A substantial and specific danger to the public health and safety.
D.C.Code § 1–615.52(6)(A)–(E) (2001).

## I.

Under its contract with OHR, CLA was to work on a backlog of pending cases and write determination letters addressing whether probable cause existed to pursue claimants' discrimination complaints. In July 2002, in her capacity as Interim Director of OHR, Wilburn decided not to exercise OHR's option to renew the CLA contract for the fiscal year beginning October 1, 2003.

On April 9, 2003, Wilburn responded in writing to inquiries from Councilmember Jim Graham in advance of an April 11, 2003 Council hearing on OHR's budget. In answer to the question, "What, in your opinion, was the level of quality of the investigations and letters of determination processed by Curtis Lewis & Associates?," Wilburn stated:

> I have only personally reviewed three cases Curtis Lewis & Associates worked on. In those three cases, the quality of work was below average because the incorrect legal standard was utilized in two cases, and issues raised in the complaints were not investigated. On July 16, 2002, the Director's Special Assistant completed a Summary Evaluation of Curtis Lewis & Associates, which I reviewed and signed as the OHR's Contracting Officer and which in turn was forwarded to the District of Columbia Office of Contracts and Procurement. Although the evaluation acknowledged that Curtis Lewis & Associates met the contractual requirements in four of the eight criteria rated, Curtis Lewis & Associates marginally met the contract requirements in four of the eight criteria rated and received an overall rating of "poor." Under the Office of Contract and Procurement's guidelines, a rating

of "poor" meant "[t]he performance [of the contractor] was simply marginal, and just barely met the contractual requirements. There are, or were, deficiencies in the overall performance that the contract needs to address. Generally, there were several concerns with the contractor's performance, quality and service.

Wilburn asserts that the foregoing response was a protected disclosure within the meaning of the DC–WPA, and she also claims that she made protected disclosures to the Council at a March 8, 2003 oversight hearing and in response to a March 10, 2003 letter from Councilmember Graham (the texts of which do not appear to be in the record).

On April 23, 2003, Mayor Williams gave remarks at OHR's annual Fair Housing Symposium. During his speech, the Mayor stated that he was going to forward Wilburn's name to the Council for confirmation as the permanent Director of the OHR. Wilburn testified in her deposition that another OHR employee heard appellee Robinson respond to the Mayor's announcement by saying, "That will never happen." At the time, Robinson was a member of the committee advising the Mayor on the selection of a new OHR Director. Wilburn alleges that Robinson "deliberately thwarted the Mayor's selection of plaintiff as the OHR Director" in retaliation for her comments to the Council about CLA.[5]

## II.

On February 1, 2007, the trial judge dismissed Wilburn's complaint, granting defendants'/appellees' Renewed Motion to Dismiss for Lack of Subject Matter Juris-

---

5. Wilburn also alleges that Robinson acted in retaliation for Wilburn's decision not to renew the CLA contract, but she does not appear to claim that this conduct fell within the prohibition of D.C.Code § 1–615.53 (proscribing retaliation because of an employee's protected disclosure or refusal to comply with an illegal order).

diction and Failure to State a Claim, filed September 19, 2006. Contemporaneously with the filing of that motion, defendants/appellees also filed a motion for summary judgment, and Wilburn filed an opposition on October 16, 2006. Thus, when the trial judge granted the motion to dismiss for failure to state a claim (and denied all other outstanding motions as moot), she ruled with a fully developed summary judgment record before her. Appellees' Supplemental Appendix contains a copy of the summary judgment record, *i.e.*, appellees' motion for summary judgment with supporting memorandum and exhibits, and appellant's opposition thereto with supporting exhibits.

■■■ As an appellate court, we may affirm the trial court's dismissal order "on any basis supported by the record." *Carney v. American Univ.*, 331 U.S.App. D.C. 416, 151 F.3d 1090, 1096 (1998). Accordingly, if we determine that summary judgment was warranted, we may affirm dismissal of the complaint on that basis. *See Jones v. Amtrak*, 942 A.2d 1103, 1106 (D.C.2008) (explaining that we may "affirm the judgment on a different ground than that relied upon by the court below if the appellant will suffer no procedural unfairness—that is, if [appellant] had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual and legal presentation with respect thereto") (citation and internal punctuation marks omitted). In determining whether summary judgment was warranted, we "assess the record independently ... [and view it] in the light most favorable to the party opposing the motion." *Scoville St. Corp. v. District TLC Trust, 1996*, 857 A.2d 1071, 1075 (D.C.2004) (internal citation omitted). Summary judgment is appropriate "if

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation and quotations marks omitted).

## III.

■■■ In order to establish a prima facie case under the DC–WPA on the basis of her statements to the Council, Wilburn had to allege facts establishing that she made a protected disclosure, that a supervisor retaliated or took or threatened to take a prohibited personnel action against her, and that her protected disclosure was a contributing factor to the retaliation or prohibited personnel action. *See Crawford v. District of Columbia*, 891 A.2d 216, 218–19 (D.C.2006). The trial court found that Wilburn had "not sufficiently alleged a connection" between her testimony about CLA and her non-appointment as OHR's permanent Director. In particular, the court found, there was "nothing in Plaintiff's filings which sufficiently indicates that Defendant Robinson even knew about Plaintiff's testimony concerning CLA." [6] While the court's statements may have correctly characterized Wilburn's complaint standing alone, Wilburn's opposition to the summary judgment motion set out more detailed allegations (including facts that could support an inference that Robinson knew about Wilburn's comments to the Council, and details about the temporal proximity between Wilburn's comments to Councilmember Graham and the Mayor's about-face decision to select someone else as OHR Director). In light of those more detailed allegations about an alleged nexus between Wilburn's comments criticizing CLA and her non-appointment as OHR Director that were part of the record when the trial court ruled, we would be reluctant

---

**6.** *Cf. Kakeh v. United Planning Org., Inc.*, 537 F.Supp.2d 65, 73 (D.D.C.2008) (holding that summary judgment under the DC–WPA was not warranted because there was a genuine issue of fact as to whether defendant was aware of any protected disclosures).

to affirm the dismissal of Wilburn's complaint on the ground cited by the trial judge. We are persuaded, however, that the dismissal must be affirmed on the alternative ground that Wilburn's statements to the Council about CLA cannot properly be regarded as a "protected disclosure" within the meaning of the DC–WPA.

This court has recognized that the federal whistleblower statute, 5 U.S.C. § 2302(b)(8),[7] "is instructive in interpreting similar state statutes," including the DC–WPA. *Crawford,* 891 A.2d at 221 n. 12 (discerning no evidence "that the D.C. Council intended to apply a different liability standard in its whistleblower cases than that applied in all other federal and state whistleblower laws ..."). As the federal courts have recognized, "the purpose of whistleblower statutes is to encourage disclosure of wrongdoing *to persons who may be in a position to act to remedy it,* either directly by management authority, or indirectly as in disclosure to the press." *Huffman v. Office of Pers. Mgmt.,* 263 F.3d 1341, 1349–50 (Fed.Cir.2001) (explaining that the "purpose of the statute is to encourage disclosures that are likely to remedy the wrong) (emphasis added) (citation omitted)."

A "protected disclosure" under the DC–WPA is one that the employee "reasonably believes" evidences one or more of the circumstances delineated in D.C.Code § 1–615.52(6)(A)–(E) (2001). For there to be a protected disclosure, "an employee must

disclose such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people." *White v. Department of the Air Force,* 391 F.3d 1377, 1382 (Fed.Cir.2004). Further, "[t]he basis for determining the nature of ... charges" that a putative whistleblower has made "are the statements ... in [her] complaint" to a supervisor or to a public body, "not [her] subsequent characterization of those statements" in litigation. *Ward v. Merit Sys. Prot. Bd.,* 981 F.2d 521, 523–28 (Fed.Cir.1992) (reasoning that, where plaintiff's disclosure was a statement to a commanding general that sending two scientists abroad to speak would not be "essential to the Army's mission," plaintiff "could not reasonably have believed that ... the cost of [the second scientist's] travel to address the meeting in Portugal constituted a gross waste of funds").

Here, it is questionable whether Wilburn's conveyance of information was a "disclosure" at all. *See Meuwissen v. Department of the Interior,* 234 F.3d 9, 13 (Fed.Cir.2000) (reasoning that "[a] disclosure of information that is publicly known is not a disclosure under the WPA," whose purpose "is to protect employees who possess knowledge of wrongdoing that is concealed ... and who step forward to help uncover and disclose that information"); *see also Clarke v. Multnomah County,* No. CV–06–229–HU, 2007 WL 915175, **16–17, 2007 U.S. Dist. LEXIS 21427, **46–47 (D.Or. Mar. 23, 2007) (finding no protected

---

7. Section 2302(b)(8) provides, in pertinent part, that:

Any employee who has authority to take, direct others to take, recommend, or approve any personnel action shall not, with respect to such authority—
(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure ... of information by an employee or applicant which the employee or applicant reasonably believes evidences—
(i) a violation of any law, rule, or regulation, or
(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety[.]
5 U.S.C. § 2302(b)(8)(A) (2008).

disclosure under Oregon whistleblower statute because "any of the communications for which plaintiff says she was retaliated against related to topics or issues already known to either the persons she reported to, or at least to other supervisory persons within the County"). The record shows that the statements that Wilburn made to Councilmember Graham in March and April 2003 conveyed (or were cumulative with respect to) information that had been known for some time both within and outside OHR. As Wilburn's April 9, 2003 statement to Graham indicates, the information that Wilburn conveyed about CLA's performance was known to the "Special Assistant [who] completed a Summary Evaluation" of CLA, and was also known to the District of Columbia Office of Contracts and Procurement, to which Wilburn forwarded the Summary Evaluation after "she had signed off on it" in August 2002. In addition, as recounted in the District Auditor's Report (see *supra* note 2), as early as the summer of 2001, the then—OHR Director and OHR staff "began to question the quality of Curtis Lewis's work product" and "raised persistent questions concerning the quality of the work supplied by the firm." Nevertheless, in light of Wilburn's uncontroverted claim that the information she conveyed about CLA's performance "was not yet known to the Council," we can assume for purposes of our analysis that Wilburn did disclose to the Council information about CLA's performance that was not already known.

That said, we have little trouble concluding—notwithstanding Wilburn's claim at oral argument that she disclosed facts fitting within each of the categories listed in D.C.Code § 1–615.52(6)(A)–(E) (2001)—that the statements that Wilburn made to the Council did not disclose "gross mismanagement," "gross misuse or waste of public resources or funds," or any other abuse, disclosure of which is protected under D.C.Code § 1–615.53 (2001). The gist of what Wilburn disclosed to the Council in her April 9, 2003 letter was that CLA—which "met the contractual requirements in four of the eight criteria rated"—"marginally met" and "just barely met the contractual requirements" in four other areas. Similarly, as Wilburn acknowledged in an August 25, 2004 deposition, in her testimony before Councilmember Graham on March 8, 2003, she characterized CLA's work as "satisfactory on some cases, but unsatisfactory on other cases." In none of her communications to the Council did Wilburn describe CLA's performance using the language of "gross" waste or abuse, or of "violation[s]," or of the other abuses listed in section 615.52(6), or any similar language. Wilburn's choice of language belies her claim that she intended to convey that CLA violated a specific "term of a contract," D.C.Code § 1–615.52(6)(D) (2001), or that there was afoot another type of wrongdoing or abuse listed in section 1–615.52(6)(A)–(E) (2001).[8] Nor could Wilburn's statements lead "a disinterested observer ... [to] reasonably conclude that the actions of the government evidence[d]" the type of gross abuse or violations described in the statute. *Zirkle v. District of Columbia,* 830 A.2d 1250, 1259–60 (D.C. 2003) (quoting *Lachance v. White,* 174 F.3d 1378, 1381 (Fed.Cir.1999)).

Moreover, the record shows that in July 2002—months prior to Wilburn's April 9,

---

**8.** It appears that information about the circumstances under which the contract was awarded to CLA could have constituted evidence of "abuse of authority in connection with ... the execution of a public contract." D.C.Code § 1–615.52(6)(C) (2001). But Wil-

burn acknowledged at her August 24, 2005 deposition that she did *not* give the Council that information—"such as the Mayor is a friend of Curtis Lewis"—because she "was not going to get on camera and intentionally say something that would hurt the Mayor."

2003 response to Councilmember Graham's questions and prior to Wilburn's testimony at OHR's performance oversight hearing in March 2003—Wilburn "decided that Curtis Lewis and Associates did not do quality work and did not renew the contract [which "had an option to renew for one year—October 1, 2003 to September 30, 2004"]." In other words, Wilburn had already acted to remedy the problem with CLA, by not renewing its contract, well before she allegedly "disclosed" the firm's poor performance to the Council. Thus, Wilburn's statements to the Council did not constitute statements "to persons who may be in a position to act to remedy" the "wrongdoing" disclosed. *Huffman,* 263 F.3d at 1349. For that reason, too, her statements to the Council cannot reasonably be regarded as "protected disclosures" within the meaning of the DC–WPA.[9]

For the foregoing reasons, defendants/appellees were entitled to summary judgment on Wilburn's DC–WPA claims. Accordingly, the judgment of the trial court dismissing the complaint is

*Affirmed.*

9. We need not address appellee Robinson's argument that dismissal of the complaint against him was required for the additional reason that, while the DC–WPA creates a private right of action against the District, it does not create a private right of action against individual supervisors. We note, however, that Robinson's argument on this point finds support in at least three decisions of the U.S. District Court for the District of Columbia applying the DC–WPA. *See Williams v. Johnson,* 537 F.Supp.2d 141, 148–49 (D.D.C.2008); *Tabb v. District of Columbia,* 477 F.Supp.2d 185, 189 (D.D.C.2007); *Winder v. Erste,* Civil Action No. 03–2623, 2005 WL 736639, **7–9, 2005 U.S. Dist. LEXIS 5190, **20–27 (D.D.C.2005).