*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

Nos. 12-CV-1477 & 13-CV-82

DISTRICT OF COLUMBIA, APPELLANT,

v.

CRYSTAL POINDEXTER, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAB-6627-08)

(Hon. Judith Bartnoff, Trial Judge)

(Argued June 3, 2014                    Decided December 11, 2014)

*Stacy L. Anderson*, Senior Assistant Attorney General for the District of Columbia, with whom *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Attorney General, were on the brief, for appellant.

*David A. Branch* for appellee.

Before GLICKMAN, BLACKBURNE-RIGSBY, and BECKWITH, *Associate Judges*.

BLACKBURNE-RIGSBY, *Associate Judge*:    Following appellee Crystal Poindexter's separation from employment with the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") and lawsuit on various grounds against her former employer, a jury found for appellee on her

Whistleblower Protection Act ("WPA") claim under D.C. Code §§ 1-615.51 to -615.59 (2001). On appeal, appellant District of Columbia ("the District") argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because appellee failed to produce sufficient evidence that any of the allegations she reported evidenced "gross mismanagement," "gross misuse or waste of public funds," "abuse of authority in connection with the administration of a public program," or "violation of law, rule, or regulation" sufficient to constitute a "protected disclosure" under the WPA. Consequently, the District contends, it was entitled to judgment as a matter of law. We agree with the District and conclude that appellee failed to present sufficient evidence to demonstrate that she made a "protected disclosure" on any basis under the WPA. Therefore, the District was entitled to judgment as a matter of law. Accordingly, we vacate the trial court's judgment and remand for it to enter judgment in the District's favor.[1]

---

[1] The District raises a second argument, namely, that because it is entitled to judgment as a matter of law, appellee is no longer entitled to an award of attorney's fees, which we dispose of summarily. While the District's direct appeal of this denial for judgment notwithstanding the verdict was pending, the trial court awarded appellee attorney's fees in the amount of $132,097.91, after having entered judgment in appellee's favor on July 28, 2010. The District subsequently appealed that order on January 30, 2013. Under the WPA, an employee who prevails on a WPA claim is eligible for award of reasonable attorney's fees. D.C. Code § 1-615.54 (a)(1)(G) (2001). Because we conclude that appellee did not proffer sufficient evidence to make out a prima facie case for her WPA claim, and that the District is entitled to judgment as a matter of law, appellee is no longer the prevailing party and is not entitled to an award of attorney's fees. *Freeman v.*

(continued. . .)

## I.  Factual Background

After working for DCRA as a Supervisory Investigator for approximately five years, appellee was transferred into the newly formed Office of Consumer Protection ("OCP"), along with Investigators Patricia Hill, Deon Henderson, and Gloria Henderson and Program Support Specialists Recita Evans and Phoebe Queen-Addison.  Robert Harris was hired in July 2006, from outside of DCRA, to be OCP's Program Manager.  Harris, in turn, hired Elise Chichester[2] and Jessica Edmonds, whom he directly supervised.  Chichester became OCP's Intake Coordinator and Edmonds was assigned the "primary function" of conducting "extensive [community] outreach," as assigned by Harris.

Appellee's job duties consisted of supervising the investigators, Evans, and Queen-Addison, assigning complaints to the various investigators, and ensuring that the OCP hotline was appropriately staffed.  The OCP hotline, located at the OCP intake desk, was one of the main conduits through which the community

---

(. . .continued)
*District of Columbia*, 60 A.3d 1131, 1154 n.62 (D.C. 2012) (citation omitted). Accordingly, we vacate the trial court's award of attorney's fees to appellee.

[2]  Chichester's name is misspelled as "Alease" and "Shychester" at various points within the transcript.

could lodge consumer complaints. Even though Chichester and Edmonds did not directly report to appellee, she supervised some of their functions, including their availability to staff the OCP hotline. Appellee required the employees she supervised at OCP to sign in and sign out on a daily basis on a sign-in sheet even though she was not the official OCP timekeeper for payroll purposes, a responsibility which fell under Harris's duties. While many managers at DCRA used similar sign-in sheets, these forms were not the subject of an agency-wide policy, and as of the time appellee used the sign-in sheets, only about half of the 400 DCRA employees were required to sign in and out. Nonetheless, because the sign-in sheets were used strictly to track employees' arrival and departure times to determine who was in the office on any particular day, appellee considered these to be "official" government documents despite the fact that they were not used for payroll purposes.

Although the OCP sign-in sheets originally only included the names of those employees whom appellee directly supervised, she later revised them to include both Chichester and Edmonds. Neither consistently signed in or out, a fact that Evans, a Program Support Specialist under appellee's authority, noticed and discussed with appellee because she felt it was unfair that "the rest of [appellee's] staff had to be accountable for signing in and the support staff didn't." Appellee

raised these concerns with Harris at a meeting in the spring or summer of 2007. Harris attested that, even after this meeting, he did not feel that Chichester and Edmonds should be required to participate in the sign-in procedure. However, according to appellee, the next day the sign-in sheet had been backdated to reflect Chichester and Edmonds's attendance at work for the prior two-and-a-half-month period. At trial, after testifying that the log had been backdated, appellee stated that she believed Chichester and Edmonds were not working as much as they claimed to be, or were required to, because she often could not locate either of them.

In the fall of 2007, appellee met with Carol Washington, DCRA's Chief of Staff, to request a reassignment, which led to a second meeting with Washington, Evans, Queen-Addison, Harris, and Lelia Franklin, DCRA's Integrity Officer. At the meeting, she discussed her "OCP Points of Concern," a document detailing points with which appellee took issue, including her concern over the sign-in sheets.[3] Appellee also expressed to Washington at the meeting that she felt the

---

[3] Appellee specifically took issue with "the two set[s] of standards that have been implemented in OCP whereby investigative staff has to sign in and out but support staff [, i.e., Chichester and Edmonds,] do[] not"; the two-and-a-half-month period that was backdated and reflected in the sign-in sheet; the failure by Chichester and Edmonds to request leave in the manager's absence; Harris's failure to inform appellee about his absences even though he notified support staff;

(continued. . .)

backdating of the sign-in sheets amounted to "stealing time from the government."[4]

Shortly after this discussion, appellee received what she believed to be a false performance management evaluation from Harris in November 2007, to which she responded with an email to Nicholas Majett, the Deputy Director of DCRA and Harris's direct supervisor, regarding the "inaccurate" evaluation she received and the issues noted in her "OCP Points of Concern."[5]

At trial, Deputy Director Majett testified that he did not believe any of appellee's allegations amounted to fraud, an abuse of authority, or a violation of law, rule, or regulation. Nonetheless, he stated that if appellee's allegations were

---

(. . .continued)
the fact that "support staff [was] not required to [staff the Consumer Protection Desk] unless told by [Harris]"; and the lack of protocol in the office, e.g., support staff was not held accountable, or if appellee attempted to do so, the staff would "run to [Harris] and [appellee would be] immediately called to [sic] question."

[4] This belief centered on the backdating of the log in its entirety, rather than any specific indication that each itemized entry was false, or that the time sheets submitted to payroll were filled out falsely on days that either Chichester or Edmonds did not work.

[5] Appellee followed up her email with another email the next day, describing Harris's hostile attitude towards her and statements he allegedly made about his reasons for wanting her fired. On January 2, 2008, appellee received notice that her employment with DCRA was being terminated for cause, effective January 18, 2008, based on various disciplinary matters. On September 12, 2008, appellee filed suit in the Superior Court of the District of Columbia against the District of Columbia, DCRA Director Linda Argo, and Harris.

taken as true, "[Harris] was a poor manager." During his testimony, Harris denied instructing Chichester and Edmonds to backdate the sign-in sheets. At the close of all of the evidence, the District renewed its motion for judgment as a matter of law, which the trial court again denied. Prior to jury deliberations, the trial court instructed the jury with regard to what constituted a "protected disclosure" under the WPA:

> An employee's belief that information she discloses to a supervisor or public body that evidences gross mismanagement, abuse of authority, or violation of relevant law is reasonable when a disinterested observer with knowledge of the essential facts, known to and readily ascertainable by the employee, could reasonably conclude that the government's actions evidence gross mismanagement.

The jury subsequently returned a verdict in appellee's favor on her WPA claim, and the trial court accordingly entered judgment in appellee's favor on July 28, 2010.

On August 16, 2010, the District moved for judgment notwithstanding the jury's verdict and for a new trial, arguing that the alleged disclosures did not constitute "protected disclosures" under the WPA as a matter of law, which the trial court denied, noting that it "d[id] not find that the record support[ed] [the District's] position[,]" and that "[t]here certainly was evidence to support [appellee's] contention that her disclosure of allegedly falsified sign-in sheets led

to the adverse actions that were taken against her." Accordingly, "[g]iven the evidence presented, the court [could not] find — particularly in the light most favorable to the [appellant,] . . . — that no reasonable juror could have found that the [appellant's] complaint regarding the sign-in sheets was a protected disclosure under the WPA."[6] This consolidated appeal followed.

## II. Discussion

The District claims that it is entitled to judgment as a matter of law because appellee failed to present sufficient evidence that she made a "protected disclosure" as part of the first element for a prima facie WPA claim.[7] D.C. Code § 1-615.52 (a)(6).

---

[6] In its factual findings, the trial court indicated that appellee proffered evidence supporting her contention that she made a "protected disclosure" on the requisite WPA bases with regard to the sign-in sheets. Specifically, she showed that the sign-in sheets: (1) were used by about half the offices in the agency; (2) tracked "other" official purposes, such as availability to cover certain OCP functions, like coverage of the customer service desk; and (3) were considered to be "official agency records." Moreover, after appellee reported that the sheets had been backdated, "[t]he response was not that [they] properly could be ignored or that the designated employees were not required to complete them."

[7] As a threshold issue, the District asserts that appellee has waived any claim as to whether she made a "protected disclosure" of a violation of law, rule, or regulation. As discussed *infra* at page 20, we believe that this claim was properly submitted at trial and thus is preserved on appeal.

This court will reverse a trial court's denial of a motion for judgment as a matter of law notwithstanding the verdict only if no reasonable juror, viewing the evidence in the light most favorable to the prevailing party, could have reached the verdict in that party's favor. *Giordano v. Sherwood*, 968 A.2d 494, 497 (D.C. 2009) (citation omitted); *Railan v. Katyal*, 766 A.2d 998, 1006 (D.C. 2001). The prevailing party is entitled to the benefit of every reasonable inference from the evidence. *Homan v. Goyal*, 711 A.2d 812, 817-18 (D.C. 1998) (citations omitted).

Employees seeking to prove that a WPA violation occurred must establish by a preponderance of the evidence that they were the subject of a prohibited personnel action because they made a "protected disclosure." *Zirkle v. District of Columbia*, 830 A.2d 1250, 1258 (D.C. 2003) (citing D.C. Code § 1-615.53). D.C. Code § 1-615.52 (a)(6)(A)–(E) sets forth five categories of "protected disclosures."[8] For purposes of our analysis here, we focus only on the four

---

[8] D.C. Code § 1-615.52 (a)(6), in its entirety, reads as follows:

> (6) "Protected disclosure" means any disclosure of information, not specifically prohibited by statute, without restriction to time, place, form, motive, context, forum, or prior disclosure made to any person by an employee or applicant, including a disclosure made in the ordinary course of an employee's duties by an employee to a supervisor or a public body that the employee reasonably believes evidences:

(continued. . .)

categories of "protected disclosures" relevant to appellee's claims, § 1-615.52 (a)(6)(A)–(D): (A) gross mismanagement; (B) gross misuse or waste of public funds; (C) abuse of authority; or (D) a violation of law, rule, or regulation. A "protected disclosure" is proven if an employee disclosed information that she "reasonably believed" evidenced one of the § 1-615.52 (a)(6) categories of disclosures. Whether an employee's belief was reasonable is determined by use of the "disinterested observer" test:

> Could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence [one of the categories of protected disclosures]? A purely subjective perspective of an employee is not sufficient even if shared by other

---

(. . .continued)

      (A) Gross mismanagement;

      (B) Gross misuse or waste of public resources or funds;

      (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;

      (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or

      (E) A substantial and specific danger to the public health and safety.

> employees. The WPA is not a weapon in arguments over policy or a shield for insubordinate conduct.

*Zirkle, supra*, 830 A.2d at 1259-60 (citation and brackets omitted). This includes a consideration of whether the evidence presented at trial, including those facts not necessarily known to but "readily ascertainable" by appellee, undercut the objective reasonableness of her belief. *See id*. at 1152. However, review must be limited to what the evidence indicates was actually included in the complaint to a supervisor or to a public body, rather than any subsequent characterization of those statements in litigation. *Wilburn v. District of Columbia*, 957 A.2d 921, 925 (D.C. 2008) (citation and internal quotation marks omitted). In this case, appellee argues that there was sufficient evidence to establish that the disclosures she made were "protected disclosures" pursuant to § 1-615.52 (a)(6)(A)–(D). We address each argument in turn.

To establish a "protected disclosure" on the basis of "gross mismanagement" pursuant to § 1-615.52 (a)(6)(A), appellee must show "a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission." *Embree v. Dep't of Treasury*, 70 M.S.P.R. 79, 85 (1996) (citation and internal quotation marks omitted); *see Wilburn, supra*, 957 A.2d at 925 ("This court has recognized that the federal whistleblower statute, 5 U.S.C. § 2302 (b)(8), is instructive in interpreting . . . the DC-WPA."). The

disclosure must, however, indicate "more than *de minimis* wrongdoing or negligence." *Id.* (citation omitted). "[D]ebatable differences of opinion concerning policy matters are not protected disclosures. Rather, for a lawful agency policy to constitute 'gross mismanagement,' an employee must disclose such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people. The matter must also be significant." *White v. Dep't of the Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004). The District contends that appellee's argument on this definition fails for two reasons.

The District first argues that appellee failed to introduce sufficient evidence at trial from which a "disinterested observer" could have reasonably concluded that the actions described with regard to the sign-in sheets rose to the level of "gross mismanagement." Specifically, the District contends that what appellee describes as a "protected disclosure" of "gross mismanagement" is instead a mere difference of opinion. *See White, supra*, 391 F.3d at 1381 ("Mere differences of opinion between an employee and [an] agency supervisor[] as to the proper approach to a particular problem or the most appropriate course of action do not rise to the level of gross mismanagement."). We agree.

In *White,* the Federal Circuit determined that the petitioner's evidence of complaints by educational institutions amounted to a "mere difference of opinion" insufficient to constitute "gross mismanagement" because, while the evidence presented showed that there was some disagreement over the Air Force's implementation of a quality educational program, there was no consensus among the majority of educational institutions, the revisions to the program did not conclusively indicate that the reason for the revisions was "a non-debatable mistake," and the report presented by petitioner highlighting certain critiques of the program did not suggest that the program was "erroneous beyond debate." *Id.* at 1383-84. Moreover, there was evidence in the record establishing that "reasonable experts in education could disagree" about the merits of the program. *Id.* at 1384.

Similarly, here, appellee's complaint that she believed Chichester and Edmonds should have been required to sign in and out appears to be nothing more than a "difference[] of opinion" in the management of these employees concerning "the proper approach to a particular problem or the most appropriate course of action." *Id.* at 1381. Essentially, appellee contended that all employees, including Chichester and Edmonds, should be required to sign in and out on a daily basis, while Harris disagreed with appellee's policy as a whole, and more specifically, with requiring Chichester and Edmonds to participate in the process. However, no

agency-wide policy requiring the use of sign-in sheets existed at OCP, and, as of the time of the events in question, only half of DCRA's employees were required to sign in and out, while the other half was not required to do so. Given the inconsistent manner in which the practice of signing in and out was followed throughout the agency, the decision whether or not to use the sign-in sheets was "merely debatable." *Embree, supra*, 70 M.S.P.R. at 85. Consequently, the lack of consensus as to the necessity of these sign-in procedures belies the fact that the decision to abandon the practice was not "erroneous beyond debate." *White, supra*, 391 F.3d at 1384.

Alternatively, the District argues that appellee failed to present sufficient evidence establishing that any failure by Harris amounted to "a management action or inaction that created a substantial risk of significant adverse impact" to OCP's ability to accomplish its mission. Even granting appellee the "benefit of every reasonable inference from the evidence," *Homan, supra*, 711 A.2d at 817–18, appellee cannot meet her burden to show the requisite "management action . . . created a substantial risk of significant adverse impact" to OCP's ability to meet its goals because the act of *backdating* the logs alone could not have affected OCP's ability to serve consumers. *Embree, supra*, 70 M.S.P.R. at 85. We reach a similar conclusion with regard to any failures by omission on Harris's part, namely,

appellee's allegations that Harris did not implement a mandatory sign-in policy for the employees he supervised, report his absences and availability to appellee, or keep all staff members "accountable." Again, because appellee failed to link these actions to additional evidence showing "a substantial risk of significant adverse impact on . . . [OCP's] ability to accomplish its mission," appellee's claims fall short of establishing the kind of "management action" needed to show "gross mismanagement." *Id.* Appellee proffered no evidence that Harris directed either Chichester or Edmonds to backdate their entries on the time sheets or that these entries falsely reflected Chichester and Edmonds's time and hours worked. And, significantly, appellee was aware that Edmonds was assigned to conduct community outreach and information about Edmonds's whereabouts on a particular day was "readily ascertainable" to appellee. This knowledge undercut the reasonableness of appellee's belief that Edmonds was not at her desk because she was not working. *Freeman, supra* note 1, 60 A.3d at 1141; *Zirkle, supra*, 830 A.2d at 1259–60. Consequently, appellee did not present sufficient evidence at trial from which a jury could reasonably conclude that she made a "protected disclosure" under the WPA on the basis of "gross mismanagement." *Giordano, supra*, 968 A.2d at 497.

Appellee next claims that she made a "protected disclosure" on the basis of a "gross misuse or waste of public funds" pursuant to § 1-615.52 (a)(6)(B), resulting from Chichester and Edmonds "stealing time" from the government by backdating their time sheets. The District contends that because appellee's sign-in sheets at OCP were not used for official payroll purposes, it was not "objectively reasonable" for appellee to conclude that DCRA or OCP suffered "any monetary loss" from any alleged inaccurate backdating of the sign-in sheets. Further, the District argues, it was unreasonable for appellee to further deduce that there had been any resulting "gross misuse or waste of public resources or funds." We agree.

"Gross waste of public funds is a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the government." *Embree, supra*, 70 M.S.P.R. at 85 (citation and internal quotation marks omitted).

Appellee argues that she had reason to believe Edmonds and Chichester were being paid for time and work they were not performing, and thus "stealing time from the government" by not accurately reporting their hours on the sign-in sheets. However, appellee failed to proffer any evidence showing that Edmonds

and Chichester falsified their official time and attendance records submitted to the OCP timekeeper, which was the only way in which the District could accrue any monetary loss that would qualify as a "waste of public funds." Moreover, with regard to the unofficial sign-in sheets, which were backdated after Edmonds and Chichester submitted their official payroll processed timesheets, appellee has not shown any additional loss accrued by the District that resulted from the allegedly false backdating of the sign-in sheets, nor has appellee demonstrated that either employee failed to work the hours reflected on the backdated time sheets. *See Zirkle, supra*, 830 A.2d at 1259–60. Appellee could not reasonably conclude that the unofficial sign-in sheets caused the DCRA or OCP a "waste of public funds," gross or otherwise. Thus, there was no legally sufficient evidentiary basis for a reasonable jury to conclude that appellee's evidence showed a "protected disclosure" on this basis either. *Railan, supra*, 766 A.2d at 1006.

Appellee further contends that she proffered sufficient evidence at trial from which a jury could conclude that she made a "protected disclosure" on the basis of "abuse of authority" pursuant to § 1-615.52 (a)(6)(C). We are unconvinced.

"Abuse of authority occurs when there is an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any

person or that results in personal gain or advantage to himself or to preferred other persons." *Embree, supra*, 70 M.S.P.R. at 85 (citation and internal quotation marks omitted).

As the District points out, here, appellee proffered insufficient evidence to establish that Chichester and Edmonds were "exercising power" because they were acting pursuant to Harris's directive, i.e., acting under their supervisor's authority. Thus, their actions could not have constituted an exercise of authority, much less an "abuse of [that] authority." Moreover, they did not possess the kind of authority that could be used to "adversely affect[] the rights of any person." *Id.* Further, even if Chichester or Edmonds was "exercising [the requisite] authority," because the logs did not have any effect on the payroll process, and appellee proffered no evidence showing that the backdating of the sign-in logs led to either receiving additional or unearned compensation, appellee has failed to show any resulting "personal gain or advantage" inuring to them from their actions. *Embree, supra*, 70 M.S.P.R. at 85; *cf. Campbell v. District of Columbia*, 972 F. Supp. 2d 38, 49 (D.D.C. 2013) (concluding that the plaintiff's evidence of the administrative agency director's "open door policy" to contractors, which in practice led to an open door for only certain "pre-selected favored vendors," supports a plausible claim of "abuse of authority" that would qualify as a protected disclosure).

Considering the remaining evidence of Harris's actions "in the light most favorable" to appellee, her claim fails. Appellee suggests that there was enough evidence to infer that appellee reasonably believed Harris was "exercising authority" to enact a policy "favoring" Chichester and Edmonds by allowing them to initially bypass the sign-in process and then backdate the logs all at once. We find no evidence to support that assertion.

Appellee's sign-in procedures did not constitute an official policy of the agency for which Chichester and Edmonds could even be favored over other similarly situated supervisees of Harris. Furthermore, appellee proffered no additional evidence of any "gain or advantage" that accrued to Chichester or Edmonds as a result of Harris's actions through compensation or otherwise. Appellee's evidence of these problematic actions fell short of demonstrating that Harris's actions amounted to "an arbitrary or capricious exercise of power by a federal official or employee that adversely affect[ed] the rights of any person or that result[ed] in personal gain or advantage to . . . preferred other persons." *Embree, supra*, 70 M.S.P.R. at 85. Moreover, "[a] purely subjective perspective of an employee is not sufficient even if shared by other employees." *Zirkle, supra*, 830 A.2d at 1260. Thus, a reasonable jury could not conclude that appellee made a "protected disclosure" on this basis.

Lastly, appellee contends that she made "protected disclosures" of a violation of a regulation pursuant to § 1-615.52 (a)(6)(D). The District argues that this court should not consider whether appellee's disclosures constitute "protected disclosures" as to a violation of a regulation because: (1) the jury instructions, under the District's interpretation, asked the jurors to only consider "gross mismanagement"; (2) appellee failed to indicate what specific regulation had been violated, both to her supervisors and at trial; and (3) she failed to provide sufficient evidence from which a jury could have reasonably concluded that she disclosed a violation of a regulation. We conclude that there was no reasonable basis from which the jury could find that appellee made a "protected disclosure" on the basis of a violation of a regulation.[9]

We choose to dispose of appellee's claim that she made a "protected disclosure" of a violation of a regulation on the merits. However, by failing to explicitly point to a specific law, rule, or regulation at trial that was violated by the alleged actions she reported, appellee arguably waived her claim. *See Langer v.*

___

[9] As an initial matter, the jury instructions given by the trial court explicitly mentioned a "violation of law" as one of the possible bases on which the jury could assess the reasonableness of appellee's belief that the actions she reported evidenced "gross mismanagement," *see supra* page 7. A "violation of law" was presented to the jury as a means of assessing whether appellee proffered evidence of a "protected disclosure."

*Dep't of Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001) ("To establish that a protected disclosure has been made under the WPA, [appellee] must [have] . . . identified a specific law, rule, or regulation that was violated") (internal quotation marks omitted). For the first time on appeal, appellee briefly touches on regulation 6-B DCMR § 1619.1 (4)(b), which makes it a violation of an employee's employment with the District of Columbia to make "[a]n intentional false statement or omission with respect to other government documents or making a false entry on government records which call into question the credibility of the document." Specifically, the regulation establishes employee disciplinary penalties for the "falsification of time and attendance records . . . or other documents related to entitlements." 6-B DCMR § 1619.1 (4)(b). Appellee has failed to proffer evidence showing that the sign-in sheets served as official timesheets for OCP and DCRA. The sign-in logs were not used for official payroll purposes, and thus did not constitute official "time and attendance records" within the meaning of the regulation. Moreover, the logs did not affect agency compensation determinations. Even viewing the evidence "in the light most favorable" to appellee, there is no evidence to support that she could have reasonably believed that the sign-in sheets were falsified or that the entries themselves failed to reflect the hours worked by Chichester and Edmonds. Absent such a factual basis, it was unreasonable for appellee to believe that the backdating

of the logs established the illegal "falsification of the time and attendance records." *See Zirkle, supra*, 830 A.2d at 1260 (concluding that it was unreasonable for the appellant to believe that a new policy was illegal while endorsing a prior policy that was simply "a different policy choice in the exercise of the same discretion"). As a result, a reasonable jury could not have concluded that she made a "protected disclosure" of a violation of a regulation.

## III.    Conclusion

For the foregoing reasons, appellee failed to proffer sufficient evidence from which a reasonable jury could find in her favor on the WPA claim because appellee's evidence failed to show that she made a "protected disclosure" on any basis. We thus vacate the judgment entered against the District and remand to the trial court for entry of judgment in the District's favor.

*So ordered.*